**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM A. JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:11CV 207 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of William A. Johnson for Disability Insurance Benefits under Title II[1] of the Social Security Act and Supplemental Security Income under Title XVI of the Act.  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff filed a Brief in support of the Complaint.  (Doc. No. 14).  Defendant filed a Brief in Support of the Answer.  (Doc. No. 17).

**Procedural History**

On October 22, 2008, plaintiff filed his application for benefits, claiming that he became unable to work due to his disabling condition on October 1, 2000.  (Tr. 121-32).  This claim was

---

[1]Plaintiff was last insured for Title II benefits on March 31, 2006.  (Tr. 140, 198, 11).  Thus, plaintiff must establish that he was disabled as of this date in order to receive Title II benefits.  See 20 C.F.R. §§ 404.101, 404.130, 404.133.

- 1 -

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written

opinion by an Administrative Law Judge (ALJ), dated June 11, 2010.  (Tr. 63-65, 73-76, 8-19).

Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the

Social Security Administration (SSA), which was denied on September 19, 2011.  (Tr. 7, 1-6).

Thus, the decision of the ALJ stands as the final decision of the Commissioner.  See 20 C.F.R. §§

404.981, 416.1481.

## **Evidence Before the ALJ**

**A.      ALJ Hearing**

Plaintiff's administrative hearing was held on May 4, 2010.  (Tr. 27).  Plaintiff was present

and was represented by counsel.  (Id.).  Also present was vocational expert Steven Dolan.  (Id.).

Plaintiff's attorney stated that he had requested updated medical records from Poplar Bluff

Regional Hospital and Missouri Highlands Healthcare.  (Tr. 28).  The ALJ indicated that he

would leave the record open for ten days.  (Tr. 29).

The ALJ examined plaintiff, who testified that he was born on November 25, 1981.  (Tr.

30).  Plaintiff stated that he graduated from high school, and obtained an associate's degree in

computer networking from ITT Technical Institute in Arnold, Missouri, in 2007.  (Tr. 31).

Plaintiff testified that he had only worked in the computer networking field for a single day.  (Tr.

31).  Plaintiff stated that he earned mostly As and Bs in college.  (Tr. 32).  Plaintiff testified that

he worked part-time while attending school full-time.  (Id.).

Plaintiff stated that he alleged October of 2000 as his disability onset date because he first

experienced problems then after being involved in an automobile accident.  (Tr. 33).  Plaintiff

testified that he started experiencing pain and swelling in his foot, which had worsened.  (Id.).

- 2 -

Plaintiff stated that his pain goes up into his legs, into his right hip, and into his back.  (Id.).
Plaintiff testified that his pain recently started going between his shoulder blades, into his
shoulders, and in his elbows, arms, hands, and fingers.  (Id.).  Plaintiff stated that he was not quite
sure when all of his problems started.  (Id.).  Plaintiff testified that his problems worsened after he
finished college.  (Tr. 34).

Plaintiff testified that he graduated from high school in 2000.  (Id.).  Plaintiff stated that he
was a full-time student in 2006 and 2007.  (Id.).  Plaintiff stated that he left home to attend
college, and that he lived in a cabin at a campground near Arnold, Missouri.  (Id.).  Plaintiff
testified that he graduated in 2007, at which time he moved back in with his family in Fairdealing,
Missouri.  (Id.).

Plaintiff stated that he lives with his mother and father.  (Id.).  Plaintiff testified that his
father is a disabled veteran and his mother is a housewife.  (Id.).  Plaintiff stated that he
occasionally does dishes, mows the yard with a riding mower, trims with a weedeater, sweeps,
cleans up, and takes out the trash.  (Tr. 36).  Plaintiff testified that his fingers spasm when he
washes dishes, and he experiences pain after trimming with the weedeater.  (Id.).

Plaintiff stated that he no longer lifts weights.  (Id.).  Plaintiff testified that, if he tries to lift
a twenty-five pound weight, his arms start to burn and tingle.  (Tr. 37).  Plaintiff stated that he
had not lifted weights in over a year.  (Id.).

Plaintiff testified that he was able to walk about half of a mile, but his hips would hurt after
the walk.  (Id.).  Plaintiff stated that, if he walked one mile, his hips and legs would burn and
tingle.  (Tr. 38).

Plaintiff testified that he takes Tramadol[2] for pain, which decreases his pain but does not eliminate it.  (Id.).  Plaintiff stated that he only takes the Tramadol as needed.  (Id.).  Plaintiff testified that he last took Tramadol two days prior to the hearing, after he mowed the grass.  (Id.).  Plaintiff stated that his yard is less than one acre, and that it takes approximately one hour to mow it using a riding mower.  (Tr. 39).

Plaintiff testified that he did not attend a consultative examination in 2005, because he had moved to Arnold to attend school.  (Tr. 40).  Plaintiff stated that he attended school to try to find a job that he could perform.  (Id.).

Plaintiff testified that he was able to walk for thirty minutes to one hour.  (Id.).  Plaintiff stated that he was able to stand for thirty minutes to one hour.  (Id.).  Plaintiff testified that he was able to lift ten pounds.  (Tr. 41).

Plaintiff stated that his doctors have told him that he has some protruding discs, and they recommended that he take pain medication and undergo epidural steroid injections.  (Id.).  Plaintiff testified that he underwent an epidural injection in January of 2010.  (Id.).  Plaintiff testified that the injection reduced the pain and tingling sensation, but did not eliminate it.  (Tr. 43).

Plaintiff testified that he squirms if he sits longer than five minutes.  (Id.).  Plaintiff stated that he has to stand after twenty to thirty minutes.  (Id.).  Plaintiff testified that he gets up frequently when watching movies or sporting events.  (Tr. 44).

Plaintiff stated that he saw neurosurgeon Dr. Sonjay Fonn in January 2009, and that Dr.

---

[2]Tramadol is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time. Physician's Desk Reference, ("PDR"), 2428 (63rd Ed. 2009).

- 4 -

Fonn recommended physical therapy and a home exercise program.  (Id.).  Plaintiff testified that

he did home exercises that Dr. Fonn recommended but did not see a physical therapist.  (Id.).

Plaintiff stated that he did not notice any improvement after doing the exercises.  (Id.).

Plaintiff testified that he believes all of his pain is radiating from his back.  (Tr. 45).

Plaintiff's attorney next examined plaintiff, who testified that lying down helps his pain.

(Id.).  Plaintiff stated that he sits in his recliner in a reclined position with his feet elevated several

times throughout the day.  (Id.).  Plaintiff testified that he sits in his recliner for thirty minutes to

one hour before he gets up and changes positions.  (Tr. 46).

Plaintiff stated that he has days on which he experiences no pain.  (Id.).  Plaintiff testified

that these days usually occur when he did not engage in any activity the prior day.  (Id.).

The vocational expert, John Dolan, next questioned plaintiff.  (Tr. 47).  Plaintiff testified

that he worked operating machines that were making crankshafts for lawnmowers in 2000 and

2001.  (Tr. 48).  Plaintiff stated that, in 2004, he worked for Poplar Bluff Internet taking phone

calls and helping people connect to the Internet.  (Tr. 49).  Plaintiff stated that he left this position

because he was unable to sit for prolonged periods, and he would miss incoming calls if he stood

up.  (Id.).  Plaintiff testified that he worked for Hastings Entertainment in 2005 doing inventory.

(Id.).  Plaintiff stated that he also assembled bookshelves at this position.  (Id.).

Mr. Dolan described plaintiff's past work as: grinding machine operator (light, semi-

skilled); user support analyst (skilled, sedentary); and inventory clerk (semi-skilled, medium).  (Tr.

50-51).  Mr. Dolan stated that he was unsure as to whether plaintiff performed any of these

positions at the substantial gainful activity level, although he worked long enough to learn how to

perform the positions.  (Tr. 51).

- 5 -

The ALJ asked Mr. Dolan to assume a hypothetical claimant with plaintiff's background and the following limitations: capable of the full range of light work other than a limitation to only occasional climbing of ladders, ropes, and scaffolds.  (Tr. 52).  Mr. Dolan testified that the individual would be capable of performing plaintiff's past work as a user support analyst and as a grinding machine operator.  (Id.).  Mr. Dolan stated that the individual could also perform other work, such as computer network supporter and cashier.  (Id.).  Mr. Dolan testified that the individual could perform almost the full range of light work with these limitations.  (Tr. 55).

The ALJ next asked Mr. Dolan to assume a claimant with plaintiff's background and a limitation to sedentary work, with only occasional climbing ladders, ropes, or scaffolds.  (Id.).  Mr. Dolan testified that the user support analyst position would remain.  (Id.).  Mr. Dolan stated that the individual could also perform other positions, such as cashier, and unskilled sedentary assembler.  (Tr. 56).

The ALJ next asked Mr. Dolan to assume the same restrictions as the second hypothetical with the additional limitation of a need for a sit/stand option.  (Id.).  Mr. Dolan testified that the individual would be unable to perform plaintiff's past work as a user support analyst according to plaintiff's testimony, although the DOT did not specify whether this position could be performed with a sit/stand option.  (Tr. 57).  Mr. Dolan stated that, based on his professional experience, he believed that the position could be performed with such a restriction.  (Id.).  Mr. Dolan testified that the individual could also perform the positions of sedentary cashier and food and beverage order clerk.  (Id.).

Plaintiff's attorney then questioned Mr. Dolan, who testified that, if the individual had to elevate his legs at random times throughout the day for up to one hour a day in addition to leaving

his workstation to move around, there would be no jobs the individual could perform.  (Id.).

When asked whether the individual could perform any jobs if he had to elevate his legs at random

times throughout the day for up to one hour a day but did not have to move around, Mr. Dolan

testified that most employers would tolerate such a restriction at a computer support position as

long as the individual could take calls while reclining.  (Id.).

Mr. Dolan testified that, if the individual could not meet normal attendance, punctuality,

or production requirements for three days a month, he would be unable to perform any position.

(Tr. 59).

**B.      Relevant Medical Records**

The record reveals that plaintiff saw Yvonne L. Smith, APRN-BC, at the office of Philma

B. Opinaldo, M.D. on September 8, 2008.  (Tr. 249-51).  Plaintiff complained of chronic back

pain that radiates down his legs to his feet, along with numbness and tingling, following a motor

vehicle accident in October 2000.  (Tr. 249).  Upon examination, Ms. Smith noted tenderness on

palpation of the lower back, and muscle spasm in the lower back.  (Tr. 250-51).  Plaintiff was

diagnosed with lower back pain and muscle spasm.  (Tr. 251).  Plaintiff was prescribed Flexeril[3]

and Naproxen,[4] and x-rays were ordered.  (Id.).

Plaintiff saw Dr. Opinaldo on October 1, 2008, at which time plaintiff complained of lower

back pain that occasionally radiates to the right hip, down the leg, and into the heel.  (Tr. 252).

Upon examination, Dr. Opinaldo noted tenderness on palpation of the middle back and lower

---

[3]Flexeril is indicated for the relief of muscle spasm associated with acute, painful
musculoskeletal conditions.  See PDR at 1931.

[4]Naproxen is a non-steroidal anti-inflammatory drug indicated for the management of pain
as well as for the treatment of arthritis.  See PDR at 2632-2633.

back, and muscle spasm of the middle and lower back.  (Tr. 253).  Plaintiff's straight leg raising

test was negative.  (Id.).  Dr. Opinaldo also noted tenderness on palpation of the right hip.  (Id.).

Plaintiff's motor exam and reflexes were normal.  (Id.).  Dr. Opinaldo diagnosed plaintiff with

lower back pain, peripheral neuropathy, and muscle spasm.  (Id.).  Dr. Opinaldo prescribed

Neurontin,[5] and scheduled an MRI of the lumbar spine.  (Id.).

Plaintiff underwent an MRI of the lumbar spine on December 1, 2008, which revealed

broad-based central disc protrusion at L5-S1 which does not cause central spinal canal stenosis; a

small right L3-L4 foraminal disc protrusion causing mild to moderate foraminal stenosis; L3-L4

through L5-S1 foraminal stenosis as otherwise noted; and triangulation of the central spinal canal

at L4-L5 without overt canal stenosis.  (Tr. 260).

Plaintiff presented to neurosurgeon Sonjay Fonn, D.O. on January 14, 2009, with

complaints of back and leg pain.  (Tr. 261-62).  Upon musculoskeletal examination, plaintiff had

full motor strength throughout, normal gait and station, and normal tone with no atrophy.  (Tr.

262).  Plaintiff's sensation and reflexes were intact.  (Id.).  Dr. Fonn reviewed plaintiff's MRI.

(Id.).  Dr. Fonn diagnosed plaintiff with degenerative disc disease at the L5-S1 level.  (Id.).  He

recommended physical therapy and home exercises.  (Id.).

Plaintiff presented to Dr. Fonn on February 11, 2009, with complaints of back pain

radiating down to his left foot.  (Tr. 265).  Plaintiff's physical examination remained unchanged,

except Dr. Fonn noted 2/4 deep tendon reflexes throughout.  (Tr. 266).  Dr. Fonn's assessment

was degenerative disc disease and lumbar spine stenosis, which does not warrant any surgical

---

[5]Neurontin is indicated for the treatment of nerve pain.  See WebMD,
http://www.webmd.com/drugs (last visited January 31, 2013).

intervention.  (Id.).  Dr. Fonn recommended conservative treatment, referred plaintiff to pain

management for such, and released him from his care.  (Id.).

Plaintiff presented to Dr. Opinaldo on March 13, 2009, at which time plaintiff complained

of low back pain radiating to his toes.  (Tr. 283).  Upon examination, Dr. Opinaldo noted

tenderness on palpation of the cervical, thoracic, and lumbosacral spine.  (Tr. 284).  Plaintiff

limped and peripheral neuropathy was noted.  (Id.).  Dr. Opinaldo diagnosed plaintiff with lower

back pain, lumbar disc degeneration L4-L5, and peripheral neuropathy.  (Id.).  Dr. Opinaldo

prescribed Tramadol, Neurontin, and Feldene,[6] and referred plaintiff to a pain management

physician.  (Id.).

Plaintiff presented to Dr. Opinaldo on November 16, 2009, at which time plaintiff

complained of chronic back pain that was progressively getting worse and was radiating to his

legs and feet.  (Tr. 285).  Upon examination, Dr. Opinaldo noted tenderness on palpation of the

lumbosacral spine, and muscle spasms of the lumbosacral spine.  (Tr. 286).  Plaintiff's motor

examination, gait and stance, and reflexes were normal.  (Id.).  Peripheral neuropathy was noted.

(Id.).  Dr. Opinaldo's assessment was lumbar disc degeneration L4-L5, peripheral neuropathy,

and muscle spasm.  (Id.).  Dr. Opinaldo prescribed Flexeril, Ultram, Feldene, and Neurontin, and

referred plaintiff to pain management.  (Id.).

Plaintiff presented to Dr. Opinaldo on December 14, 2009, for a routine office visit and

blood work.  (Tr. 288).  Plaintiff complained of spasm in the left hand with no pain or numbness,

and low back pain.  (Id.).  It was noted that plaintiff was scheduled to see a pain management

---

[6]Feldene is a nonsteroidal anti-inflammatory drug indicated to reduce pain, swelling, and
joint stiffness from arthritis.  See WebMD, http://www.webmd.com/drugs (last visited January 31,
2013.

physician in February.  (Id.).  Upon examination, Dr. Opinaldo noted tenderness on palpation of

the lumbosacral spine, and muscle spasm of the lumbosacral spine.  (Tr. 289).  Dr. Opinaldo's

assessment was lumbar disc degeneration L4-L5, peripheral neuropathy, and muscle spasm.  (Id.).

Plaintiff presented to Dr. Opinaldo on March 26, 2010, for a follow-up after seeing Dr.

Soeder.  (Tr. 290).  Plaintiff reported that the tingling was better after undergoing a lumbar

epidural injection, but he still experienced pain.  (Id.).  Plaintiff also complained of pain in his

shoulders and arms, which started a few months prior.  (Id.).  Upon examination, Dr. Opinaldo

noted tenderness on palpation of the elbows, shoulders, cervical spine, thoracic spine, lumbosacral

spine, and hips.  (Tr. 291).  Plaintiff had normal range of motion of the shoulders.  (Id.).  Dr.

Opinaldo noted muscle spasms of the lumbosacral spine, with a negative straight-leg raising test.

(Id.).  A subjective burning sensation was noted in between the shoulder blades, elbows, and

lumbar spine.  (Id.).  Plaintiff's motor examination, gait and stance, and reflexes were normal.

(Id.).  Dr. Opinaldo's assessment was lumbar disc degeneration L4-L5, peripheral neuropathy,

and muscle spasm.  (Id.).  Dr. Opinaldo continued plaintiff's medications.  (Id.).

### The ALJ's Determination

The ALJ made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act
       through March 31, 2006.

2.     The claimant has not engaged in substantial gainful activity since October 1,
       2000, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: diffuse disc at L5-S1 and mild
       disc bulge at L3-L4 with moderate stenosis and radiating pain (20 CFR
       404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that
       meets or medically equals one of the listed impairments in 20 CFR Part 404,

- 10 -

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.       After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could only occasionally climb ladders, ropes and scaffolds.

6.       The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.       The claimant was born on November 25, 1981 and was 18 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date  (20 CFR 404.1563 and 416.963).

8.       The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.       The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-18).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits  filed on October 6, 2008, the claimant is not disabled under sections 216(I) and 223(d) of   the Social Security Act.

Based on the application for supplemental security income filed on October 6, 2008, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 18).

- 11 -

### Discussion

**A.      Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to

the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA

will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v.

Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and

evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence

in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

**B.      The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant

has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d

- 12 -

598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied.  See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.  See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the

claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  See id.  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

**C.      Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in failing to consider whether plaintiff's impairments met or equaled listing 1.02.  Plaintiff next argues that the ALJ erred in assessing the credibility of plaintiff's complaints of pain.  The undersigned will address plaintiff's claims in turn.

**1.      Listing 1.02**

Plaintiff contends that the ALJ erred in failing to consider Listing 1.02.  The claimant bears the burden of proving his impairment meets or equals a listing.  Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  To meet a listing requirement, an impairment must meet all of the listing's specified criteria.  Id.  An impairment that only meets some criteria does not qualify, no matter how severe the impairment.  Id.

In this case, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (Tr. 13).  The ALJ specifically considered Listing 1.04, disorders of the spine, which was appropriate due to plaintiff's severe spinal impairments.  Even if Listing 1.02 were applicable in this case, an ALJ's failure to address a

specific listing is not reversible error if the record supports his overall conclusion.  Moore ex rel.

Moore v. Barnhart, 413 F.3d 718, 721 n. 3 (8th Cir. 2005).

The undersigned finds that plaintiff has failed to demonstrate that his impairments meet the

requirements of Listing 1.02.

Listing 1.02 states, in relevant part,

1.02    *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross
anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
instability) and chronic joint pain and stiffness with signs of limitation of motion or
other abnormal motion of the affected joint(s), and findings on appropriate
medically acceptable imaging of joint space narrowing, bony destruction, or
ankylosis of the affected joint(s). With:

A.    Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee,
or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B.    Involvement of one major peripheral joint in each upper extremity (i.e.,
shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross
movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

The "inability to ambulate effectively" means an extreme limitation in the ability to walk,

which generally requires the use of an assistive device.  20 C.F.R. Part 404, Subpart P, App. 1,

§ 1.00(B)(2)(b).  The "inability to perform fine and gross movements" means an extreme loss of

function of both upper extremities.  20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(c).

In this case, the medical record indicates plaintiff had little, if any, difficulty walking on his

own, and had no extreme loss of function in his upper extremities.  In January 2009 and February

2009, Dr. Fonn noted that plaintiff's gait and station were normal.  (Tr. 262, 266).  In March

2009, Dr. Opinaldo indicated that plaintiff limped.  (Tr. 284).  In November 2009, however, Dr.

Opinaldo noted that plaintiff's gait and stance were normal.  (Tr. 286).  Dr. Opinaldo again found

- 15 -

that plaintiff's gait and stance were normal in March 2010.  (Tr. 291).  Further, plaintiff testified

at the hearing that he was able to walk for half of a mile.  (Tr. 37).  Thus, the medical evidence

and plaintiff's own testimony refute his claim of an inability to ambulate effectively.

With regard to plaintiff's upper extremities, plaintiff complained of spasm in his left hand

with no pain or numbness in December 2009.  (Tr. 288).  Dr. Opinaldo, however, noted no upper

extremity abnormalities on examination.  (Tr. 289).  In March 2010, plaintiff complained for the

first time of pain in his shoulders and arms, which he reported had started a few months prior.

(Tr. 290).  Upon examination, plaintiff had tenderness to palpation of the elbows and shoulders,

but normal range of motion of the shoulders, and a normal motor examination and reflexes.  (Tr.

291).  The medical evidence does not support a finding of inability to perform fine and gross

movements.  Thus, the ALJ did not err in failing to discuss Listing 1.02.

## 2.      Credibility Assessment

Plaintiff argues that the ALJ erred in assessing the credibility of his subjective complaints

of pain.

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect

relationship between the impairment and the degree of claimant's subjective complaints need not

be produced."  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Although an ALJ may

reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make

an express credibility determination detailing reasons for discrediting the testimony, must set forth

the inconsistencies, and must discuss the Polaski factors."  Kelley v. Callahan, 133 F.3d 583, 588

(8th Cir. 1998).  Polaski requires the consideration of:  (1) the claimant's daily activities; (2) the

duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.  Polaski, 739 F.2d at 1322.  Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints.  Id.  The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

The court finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. "[T]he question is not whether [plaintiff] suffers any pain; it is whether []he is fully credible when []he claims that [the pain] hurts so much that it prevents h[im] from engaging in h[is] prior work." Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).  Thus, the relevant inquiry is whether or not plaintiff's complaints that his pain is at a degree of severity that prevents him from working are credible.

In the present case, the ALJ properly pointed out the Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain. (Tr. 14-17).  The ALJ first discussed the objective medical evidence and found that it did not support plaintiff's subjective complaints.  (Tr. 15).  Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility.  See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ acknowledged that an MRI of plaintiff's lumbar spine revealed a broad-based central disc protrusion at L5-S1, which did not cause central spinal canal stenosis; small right L3-

L4 foraminal disc protrusion which caused mild to moderate foraminal stenosis; L3-L4 through L5-S1 foraminal stenosis; and triangulation of the central spinal canal at L4-L5 without overt canal stenosis.  (Tr. 15, 260).  The ALJ pointed out that physical examinations often revealed tenderness on palpation and muscle spasms, but negative straight leg raising tests.  (Tr. 15, 253, 291).  The ALJ concluded that, while the objective medical evidence reveals that plaintiff has a lower back impairment, it is not consistent with plaintiff's allegations of total disability.  (Tr. 15).

The ALJ next stated that plaintiff has not received medical treatment which one would expect from a totally disabled individual.  (T. 15).  The ALJ pointed out that, despite plaintiff's allegations of disabling pain and limitations since 2000, plaintiff did not seek treatment until September 2008.  (Tr. 15, 249-51).  This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability.  See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).  The fact that plaintiff did not seek medical treatment for an eight-year period after his alleged onset of disability detracts significantly from the credibility of plaintiff's subjective complaints.  In addition, the ALJ noted that plaintiff has received conservative treatment.  (Tr. 16).  The ALJ noted that Dr. Fonn found that plaintiff's spinal impairments did not require any surgical intervention and recommended that plaintiff receive conservative treatment and pain management.  (Tr. 16, 266).

The ALJ next discussed plaintiff's daily activities.  (Tr. 16).  The ALJ pointed to plaintiff's testimony that he can wash dishes, mow the yard with a riding mower, use a weedeater, sweep, and pick up the yard.  (Tr. 16, 36).  In addition, the ALJ noted that plaintiff testified that he attended school full-time in 2006 and 2007, after his alleged onset date.  (Tr. 16, 34).  While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be

disabled, plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the claimant watched television, read, drove, and attended church in concluding that subjective complaints of pain were not credible).  Plaintiff's ability to attend school full-time for a two-year period after his alleged onset date of disability is especially inconsistent with his allegations of disabling pain.  In addition, plaintiff testified that he worked part-time while attending school.  (Tr. 32).  Thus, the ALJ properly considered plaintiff's daily activities as one factor that weighed against the credibility of his subjective complaints.

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).  However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints.  See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).  In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not entirely credible is supported by substantial evidence.

Plaintiff also appears to challenge the ALJ's RFC determination, in arguing that the ALJ did not include any nonexertional limitations.

The ALJ made the following determination regarding plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could only occasionally climb ladders, ropes and scaffolds.

(Tr. 14).

"It is the ALJ's responsibility to determine claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007).  In determining plaintiff's RFC, the ALJ acknowledged that the medical record clearly establishes that plaintiff has minor lower back problems which cause some pain, but which would not preclude all work. (Tr. 16).  The ALJ then noted that plaintiff admitted that he was able to walk and stand for one hour, sit for up to thirty minutes at a time, and lift ten pounds. (Tr. 16, 40-41).  The ALJ pointed out that plaintiff had received conservative treatment and that there was limited objective evidence. (Tr. 16).

The ALJ's RFC determination is supported by substantial evidence.  The ALJ performed a proper credibility analysis and found that plaintiff's subjective complaints of pain were not entirely credible.  Significantly, plaintiff was able to attend school on a full-time basis for two years, while working part-time, after his alleged onset of disability.  Despite plaintiff's alleged onset of disability date of October 2000, plaintiff did not seek medical treatment until September 2008. The ALJ accurately pointed out that, while the objective medical record reveals that plaintiff suffers from a back impairment, plaintiff received minimal and conservative treatment. Additionally, plaintiff's own testimony regarding his limitations is largely consistent with the performance of sedentary work.

Further, while the ALJ did not incorporate a sit/stand option in his RFC, the vocational expert testified that plaintiff would be able to perform his past position of user support analyst as well as positions of sedentary cashier and food and beverage order clerk if he required a sit/stand option in addition to the limitations found by the ALJ in his RFC determination. (Tr. 57).  Thus,

even if the ALJ had accepted as credible plaintiff's allegation of a need for a sit/stand option, the

ALJ's decision that plaintiff is not disabled would be supported by substantial evidence.

### Conclusion

In sum, the undersigned finds that substantial evidence in the record as a whole supports

the decision of the ALJ finding plaintiff not disabled because the evidence of record does not

support the presence of a disabling impairment.  Accordingly, Judgment will be entered separately

in favor of defendant in accordance with this Memorandum.


Dated this 7th  day of February, 2013.


LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE